IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

KATHARINE R.,

                    Plaintiff,

          v.                              Civil Action No.
                                          3:18-CV-1194 (DEP)
ANDREW SAUL, Commissioner of
Social Security,[1]

                    Defendant.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF

LACHMAN, GORTON LAW FIRM                  PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

FOR DEFENDANT

HON. GRANT C. JAQUITH                     ANDREEA LECHLEITNER, ESQ.
United States Attorney                    Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

_____

[1]     Plaintiff's complaint named Nancy A. Berryhill, as the Acting Commissioner of
Social Security, as the defendant. On June 4, 2019, Andrew Saul took office as Social
Security Commissioner. He has therefore been substituted as the named defendant in
this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no
further action is required in order to effectuate this change. *See* 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>ORDER</u>

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[2] Oral argument was heard in connection with those motions on August 27, 2019, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is

---

[2] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

incorporated herein by reference, it is hereby

ORDERED, as follows:

1)      Defendant's motion for judgment on the pleadings is GRANTED.

2)      The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3)      The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:      August 29, 2019
            Syracuse, NY

1

```
1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF NEW YORK

3

4   KATHARINE R.,                    )
                                     )
5            Plaintiff,              )    CASE NO. 3:18-CV-1194
                                     )
6        vs.                         )
                                     )
7   ANDREW SAUL, COMMISSIONER OF     )
    SOCIAL SECURITY,                 )
8                                    )
             Defendant.              )
9   _____ )

10

11              TRANSCRIPT OF DECISION
             BEFORE THE HON. DAVID E. PEEBLES
12              TUESDAY, AUGUST 27, 2019
                  SYRACUSE, NEW YORK
13

14  FOR THE PLAINTIFF: (by telephone)
         Lachman, Gorton Law Firm
15       By:  Peter A. Gorton, Esq.
         1500 East Main Street
16       Endicott, New York  13760

17

18  FOR THE DEFENDANT:  (by telephone)
         Social Security Administration
19       By:  Andreea L. Lechleitner, SAUSA
         26 Federal Plaza, Room 3904
20       New York, New York  10278

21

22

23

24         THERESA J. CASAL, RPR, CRR, CSR
          Federal Official Court Reporter
25           445 Broadway, Room 509
            Albany, New York  12207

            THERESA J. CASAL, RPR, CRR
          UNITED STATES DISTRICT COURT - NDNY
```

1          THE COURT:  All right.  Thank you both for

2     excellent presentations.  I found this to be a very

3     interesting case.

4          I have before me a request for judicial review of

5     an adverse determination by the Commissioner of Social

6     Security pursuant to 42 United States Code Sections 405(g)

7     and 1383(c)(3).  The background is as follows:

8          The plaintiff was born in September of 1993 and is

9     currently 25 years of age, almost 26.  She was 8 years old

10    at the alleged date of onset of her disability in September

11    of 2001.  Plaintiff stands 5 foot 5 inches in height and has

12    weighed between 155 pounds, at 245 of the administrative

13    transcript, and 178 pounds at 473 of the administrative

14    transcript.  Plaintiff lives in Johnson City where she rents

15    a house with her partner.

16         Plaintiff has a high school diploma -- well, it's

17    a Regents diploma, but she did undergo some special

18    education during the time that she was in high school.

19    She's been described in the record, including at 818, in

20    Exhibit 1E, as "academically successful."  Plaintiff did

21    attend one semester of school at Broome Community College.

22    There was an incident that occurred during that semester

23    which resulted in her being taken into custody and to CPEP

24    and she was physically removed from campus.  That's

25    described at 350 of the administrative transcript.

1    Plaintiff is right-handed.  She has a permit but

2  does not drive.  Plaintiff has no significant work history.

3  She has volunteered at a cat shelter, although that shelter

4  apparently closed; that's at 33 and 424 of the

5  administrative transcript.  She also has volunteered in a

6  flood relief setting, that's at page 41 and 477, and there

7  is reference in the administrative transcript to plaintiff

8  searching for work, that's at 323 and 337 of the

9  administrative transcript.

10    Plaintiff suffers from both medical and some

11  physical impairments.  Mentally, she suffers from an

12  impairment -- or multiple impairments that have been

13  variously diagnosed over time, including Asperger's

14  Syndrome, major depressive disorder, Post-Traumatic Stress

15  Disorder, borderline personality disorder and unspecified

16  schizophrenia or other psychotic disorder, bipolar disorder,

17  mood disorder, anxiety disorder.  She has suffered from time

18  to time of suicidal ideations, threats of self-harm, poor

19  hygiene and reported hallucinations.

20    She was taken to CPEP, as was previously

21  indicated, when she was at Broome College -- Broome

22  Community College, and it's unclear, but it looks like that

23  may have been in 2012.  She was taken to CPEP in April of

24  2014, that's at 331.  She was taken to the emergency room in

25  December of 2015 for a cut on her leg, the emergency room in

1   April of 2014 and the emergency room in March of 2014.

2           The plaintiff has undergone treatment at Family

3   and Children's Society, including from Dr. Robert Webster.

4   Medically, in terms of her mental condition, she has been

5   prescribed Quetiapine for her mood and psychosis;

6   Sertraline, which is generic Zoloft, for depression and

7   anxiety; Hydrozine, for anxiety and sleep disorder; and

8   Abilify.  She also was on Seroquel.

9           Physically, plaintiff is obese.  She suffered from

10  various head trauma, including an injury in January of 2017

11  as a result of a domestic abuse incident.  She suffers from

12  concussion and headaches, dizziness, blurred vision and

13  photosensitivity.  She has been -- undergone treatment from

14  Dr. Misty Ondrusek and Dr. Ahmed Alwan.  She has been

15  prescribed Topamax for headaches.  She did undergo EMG

16  testing in January of 2018, the results of which were

17  normal; that's at 1045 and 1046 of the administrative

18  transcript.

19          With regard to her mental condition, I omitted

20  that she also apparently has treated with Dr. Michael

21  Bennett and LCSW Kimberly Catalano (phonetic) and LCSW

22  Jeanne Wescott.

23          In terms of activities of daily living, it's

24  variously reported at 233 to 236, 1078 and 934 that

25  plaintiff cooks and prepares meals; she walks 1.3 miles as

1    referenced at 323, 5 miles at 239; she socializes with

2    friends; she enjoys computer games, she cares for cats,

3    cleans, does laundry, shovels, draws, likes music, watches

4    Netflix movies, likes astronomy, sells art, administers an

5    internet art group, she enjoys gardening and cares for beta

6    fish.

7            Procedurally, this case has had an interesting and

8    somewhat extensive history.  Plaintiff applied for SSI, or

9    Supplemental Security Income, benefits in February of 2013,

10   alleging an onset date of September 6, 2001.  On August 18,

11   2014, an Administrative Law Judge, Marie Greener, held a

12   hearing and subsequently a supplemental hearing with a

13   vocational expert on May 13, 2015.  ALJ Greener issued an

14   unfavorable decision on June 3, 2015, finding that plaintiff

15   was not disabled at relevant times.  After plaintiff

16   challenged that determination in this court, the matter was

17   remanded on stipulation of the parties on March 10, 2017.

18   The Social Security Administration Appeals Counsel

19   subsequently remanded the matter to an ALJ with instructions

20   on July 19, 2017.

21           On June 19, 2018, ALJ John P. Ramos conducted a

22   hearing with a medical expert who had previously answered

23   interrogatories, Dr. Kahn, and a vocational expert that was

24   assigned to him after ALJ Greener retired.  ALJ Ramos issued

25   an unfavorable decision on July 26, 2018, again finding that

*K.R. v. Saul - 18-CV-1194*

1    plaintiff is not disabled at relevant times.

2          In his decision, ALJ Ramos applied the familiar

3    five-step sequential test for determining disability.  He

4    concluded, at step one, that plaintiff had not engaged in

5    substantial gainful activity since the date of her

6    application of February 7, 2013.

7          He concluded, at step two, that plaintiff suffered

8    from severe impairments that impose more than minimal

9    limitations on her ability to perform basic work activities,

10   including residuals of status post-concussion syndrome;

11   obesity; Asperger's Syndrome; a major depressive disorder; a

12   psychotic disorder NOS, or not otherwise specified; a

13   bipolar disorder, most recent episode manic; a mood disorder

14   NOS; an anxiety disorder NOS; Post-Traumatic Stress

15   Disorder; a borderline personality disorder; and a

16   (inaudible) personality disorder.

17         ALJ Ramos concluded, however, at step three that

18   plaintiff's conditions did not meet or medically equal any

19   of the listed presumptively disabling conditions set forth

20   in the Commissioner's regulations, specifically considering

21   listings 12.02, 12.03, 12.04, 12.06, 12.08, 12.10 and 12.15,

22   relying heavily on both Dr. Sharon Kahn's interrogatory

23   responses and Dr. E. Kamin's findings, the Agency

24   psychologist, non-examining.

25         At step four -- I'm sorry, before proceeding  to

1    step four, ALJ Ramos surveyed the record and concluded that

2    plaintiff does retain the Residual Functional Capacity, or

3    RFC, to perform light work, but concluded, from a physical

4    standpoint, plaintiff should not be exposed to bright

5    outdoor sunlight.  Mentally, he imposed several limitations,

6    including, but not limited to, she should have no more than

7    occasional brief interaction with the public; she can handle

8    reasonable levels of simple work-related stress, in that she

9    can make decisions directly related to the performance of

10   simple work and handle usual workplace changes and

11   interactions associated with simple work; she should work in

12   a position where she is not responsible for the work of

13   others and with little change in daily routine or work

14   duties or processes.  At step four, applying that Residual

15   Functional Capacity, plaintiff -- ALJ Ramos noted that

16   plaintiff did not have any past relevant work.

17          At step five, with the benefit of testimony from a

18   vocational expert, he concluded that plaintiff is capable of

19   performing as a cleaner, a mail sorter and routing clerk and

20   that there were jobs in sufficient numbers in the national

21   economy in those positions.  He did note that if there were

22   no non-exertional limitations and plaintiff could perform a

23   full range of light work under the medical vocational

24   guidelines, or the grids, grid rule 202.20, finding no

25   disability.

*K.R. v. Saul - 18-CV-1194*

1    As you know, my function is limited to determining

2    whether correct legal principles were applied and the

3    determination is supported by substantial evidence, which is

4    defined as such evidence as a reasonable person could find

5    sufficient to support a factual determination.  It is an

6    extremely deferential but not nonexistent standard.

7    The first argument concerns Dr. Kahn.  Dr. Kahn

8    rendered opinions in responses to interrogatories and

9    testified to her conclusions at pages 520 to 541 of the

10   administrative transcript.  She concluded that plaintiff

11   does have moderate limitation in responding appropriately to

12   usual work settings and changes to routine work settings at

13   807.  The qualifications of Dr. Kahn were set forth in her

14   CV or resume at 821-825.  She has been, among other things,

15   a medical expert for the Social Security Administration

16   since 2011.

17   I have reviewed carefully the questioning of

18   Dr. Kahn, I've reviewed carefully the decision that was

19   cited in support of the bias argument, *Weston versus Colvin*,

20   2017 WL 4230502, Judge Teleska's decision from the Western

21   District of New York.  I did find that certainly there

22   was -- the questioning of Dr. Kahn was somewhat rocky when

23   she was being cross-examined by Mr. Gorton, but I didn't

24   find any evidence of bias.  I also found that her opinions

25   are not inconsistent with the RFC and that the RFC is not

*K.R. v. Saul – 18-CV-1194*

1   inconsistent with nor is Dr. Kahn's opinion inconsistent

2   with the ability to perform unskilled work.  *Zabala versus*

3   *Astrue*, 595 Fed 3d 402, a Second Circuit decision from 2010,

4   suggests that moderate limitation in work-related

5   functioning does not preclude the ability to perform

6   unskilled work.  Similar decision resulted in *Sipe versus*

7   *Astrue*, 873 Fed Supp 2d 471, a decision from this Court in

8   2012.  And I note that this portion of Dr. Kahn's opinion

9   was accounted for in the Residual Functional Capacity, which

10  limited the plaintiff to work involving little change in

11  daily routine and work duties or processes.

12          The argument that plaintiff has made about

13  Dr. Kahn not being allowed to consider other evidence, I

14  have reviewed carefully the other evidence that is

15  related -- that is involved, 25F and 26F, specifically.  It

16  was noted at page 522 that those documents were not timely

17  submitted under the rules and regulations associated with

18  the hearings, but I show at 25F, for example, I reviewed

19  carefully, it appears that those treatment notes show that

20  plaintiff's condition was stable, that she was responding

21  well to medications and doesn't appear to be at odds with

22  the RFC and, therefore, does not require remand.  Similarly,

23  26F, there is an observation that plaintiff doesn't

24  necessarily do well with crowds.  That's been accommodated

25  in the RFC as well, requiring limited contact.

1    In terms of noise, under the Dictionary of

2    Occupational Titles, none of the three jobs specified

3    require significant exposure to loud noises, specifically

4    the mail sorter and routing clerk is defined as a quiet

5    position.  The router and routing clerk is also defined as

6    quiet.  Cleaner is defined as having a moderate noise level.

7    So that under *Camille*, the case cited by the Commissioner, I

8    don't find that the failure to permit Dr. Kahn to consider

9    those exhibits requires remand.

10    I also note that the RFC finding, even if Dr. Kahn

11    is discounted, is supported by Dr. Long, which -- whose

12    opinions can provide substantial evidence, and Dr. Kamin.  I

13    also note that the activities of daily living, which were

14    fairly robust, support the Administrative Law Judge's RFC.

15    The end result is the treatment notes show that

16    plaintiff has improved with medication and counseling.

17    There is clearly conflicting medical evidence in the record,

18    including from the treating source, Dr. Webster, but in the

19    end, it is for the Administrative Law Judge to resolve those

20    inconsistencies under *Veino versus Barnhart*.

21    There was also a treating source argument.

22    Obviously, the opinions of Dr. Webster and LCSW Wescott were

23    very contrary to and almost diametrically opposed to

24    Dr. Kahn, Dr. Long and Dr. Kamin, but -- and certainly in

25    mental health conditions, a treating perspective is

1  important under *Flynn*, but not dispositive necessarily.

2          The reasons for discounting Dr. Wescott's --

3  Dr. Webster, I'm sorry, Dr. Webster's opinions are explained

4  by ALJ Ramos at 502 and 503. Dr. Kahn testified why her

5  opinions were inconsistent with the medical -- why

6  Dr. Webster's opinions were inconsistent with the medical

7  evidence and plaintiff's activities of daily living.

8  ALJ Ramos's discussion of that could perhaps have been more

9  fulsome, but I find that it is sufficient to permit

10 meaningful judicial review. It is very inconsistent with --

11 Dr. Webster's opinions in the medical source statement are

12 inconsistent with his treatment notes and the showing that

13 plaintiff was benefitting from treatment and medications.

14         In terms of vision, there was an argument made

15 that the RFC did not account for plaintiff's post-concussion

16 status and that there was no finding of step two that should

17 have been made. But the Residual Functional Capacity

18 finding restricts plaintiff's exposure to bright sunlight.

19 Plaintiff, obviously, has the burden of establishing that

20 limitation under *Poupore* and did not demonstrate that it

21 imposes more than a minimal limitation on her ability to

22 perform basic work functions.

23         At step five, I find that the hypothetical posed

24 by the Administrative Law Judge to the vocational expert is

25 supported by substantial evidence and, therefore, the

*K.R. v. Saul - 18-CV-1194*

1  vocational expert's testimony supports the finding of no

2  disability.

3          Reviewing this record, I or another impartial

4  person could reach a contrary result, but the bottom line is

5  the question is:  Is it supported by substantial evidence

6  and could no reasonable fact finder conclude as the

7  Administrative Law Judge, and I am unable to make that

8  determination.

9          So I will grant judgment on the pleadings to the

10  defendant and dismiss plaintiff's complaint.

11          Again, thank you both for excellent presentations.

12  I hope you enjoy the rest of your summer.  Bye-bye.

13          MS. LECHLEITNER:  Thank you, your Honor.

14          MR. GORTON:  Thank you, your Honor.

15                    (This matter adjourned at 12:08 PM.)

16                         - - - - -

17

18

19

20

21

22

23

24

25

```
 1              CERTIFICATION OF OFFICIAL REPORTER

 2

 3

 4              I, THERESA J. CASAL, RPR, CRR, CSR, Official

 5    Realtime Court Reporter, in and for the United States

 6    District Court for the Northern District of New York, do

 7    hereby certify that pursuant to Section 753, Title 28,

 8    United States Code, that the foregoing is a true and correct

 9    transcript of the stenographically reported proceedings held

10    in the above-entitled matter and that the transcript page

11    format is in conformance with the regulations of the

12    Judicial Conference of the United States.

13

14              Dated this 28th day of August, 2019.

15

16         /s/ THERESA J. CASAL

17         THERESA J. CASAL, RPR, CRR, CSR

18         FEDERAL OFFICIAL COURT REPORTER

19

20

21

22

23

24

25
```

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT – NDNY*